**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

**UNITED STATES OF AMERICA**,

    Plaintiff,

vs.                                                                                            No. CR 07-791 MCA

**LEHMAN SMITH,**

    Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on *Defendant's Motion for Disclosure of Interview Notes* [Doc. 62], filed January 18, 2008; *Defendant's Motion in Limine to Exclude Hearsay* [Doc. 81], filed June 9, 2008; *Defendant's Motion in Limine to Exclude Prior Bad Act Evidence* [Doc. 82], filed June 9, 2008; the *United States' First Motion in Limine Requesting Admission of Excited Utterance Evidence* [Doc. 87], filed June 23, 2008; the *United States' Second Motion in Limine Regarding Certain DNA Evidence* [Doc. 88], filed June 23, 2008; and the *United States' Third Motion in Limine Regarding Darren Moses* [Doc. 91], filed June 26, 2008.  The Court held a hearing on the motions on July 2, 2008. Having reviewed the parties' submissions, the relevant law, the arguments presented at the motions hearing, and otherwise being fully advised in the premises, the Court now issues its rulings on the motions.

**I. BACKGROUND**

The facts of this case have been set out by the Court in its October 24, 2007 *Memorandum Opinion and Order* [Doc. 43] denying Defendant Lehman Smith's motions to suppress, and will not be further detailed here, except to restate that on April 24, 2007, Defendant was charged in a one-count Indictment with having knowingly engaged and attempted to engage in a sexual act with Jane Doe, a person who was incapable of appraising the nature of the conduct and who could not communicate unwillingness to engage in the sexual act, in violation of 18 U.S.C. §§ 1153, 2242(2), and 2246(2)(A). [Doc. 12]. While Defendant "does not deny having had sexual relations with [Jane Doe, h]e does vehemently deny that he raped her." [Doc. 90 at 2]. It is Defendant's contention that he and Jane Doe engaged in a consensual sexual encounter. The charged incident occurred on or about March 25, 2007.

**II. ANALYSIS**

**A. *Defendant's Motion for Disclosure of Interview Notes* [Doc. 62]**

On January 18, 2008, Defendant filed a motion seeking an order directing the Government to provide him with copies of the investigating agents' and officers' notes of interviews of witnesses, Jane Doe, and Defendant. [See generally Doc. 62]. During a telephonic status conference held on February 6, 2008, counsel for the Government stated that the requested notes had been sent via Federal Express to counsel for Defendant that day. [Doc. 65]. At the hearing on the instant motions, counsel for Defendant confirmed that she had received the notes in question and, therefore, her motion had been rendered moot.

Accordingly, *Defendant's Motion for Disclosure of Interview Notes* will be denied as moot.

### B. *Defendant's Motion in Limine to Exclude Hearsay* [Doc. 81]; and

### C. *United States' First Motion in Limine Requesting Admission of Excited Utterance Evidence* [Doc. 87]

"Hearsay" is defined as "an out-of-court statement 'offered in evidence to prove the truth of the matter asserted,' . . . and is inadmissible, subject to certain exceptions." United States v. Ledford, 443 F.3d 702, 707 (10th Cir. 2005) (*quoting* Fed.R.Evid. 801(c)). One such exception to this general rule is the "excited utterance" exception, which holds that a statement is not hearsay if it constitutes "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." Fed.R.Evid. 803(2). The "excited utterance" exception "requires that (1) there was a startling event; (2) the statement was made while the declarant was under the stress of excitement from this event; and (3) the statement related to this event." Ledford, 443 F.3d at 710.

In this case, the parties disagree as to the admissibility (or inadmissibility) of post-incident statements Jane Doe made to Shannon Tatro, her boyfriend, and Marie Perry, a woman from whom Jane Doe sought assistance in the early morning hours after the alleged attack.

#### 1. Statements to Marie Perry

When she was interviewed by FBI agents, Ms. Perry explained that early on the morning of March 25, 2007, she heard banging on her door, as well as a female voice saying

"help me, help me." [Doc. 86-2, Perry interview at 1]. Ms. Perry opened the door to see Jane Doe bent over, trying to pull up her pants. Defendant was there also, and when Ms. Perry asked where they were coming from, Jane Doe, who was crying, responded that Defendant had assaulted and choked her. [Id.]. Additionally,

> [Ms.] Perry advised that the girl responded [to Defendant's assertion that she had attacked him], "I woke up with my pants down here. Then I jumped him and hit him." The girl added that [Defendant] then hit her back. [Ms.] Perry recalled that the girl was still crying and called her boyfriend on her cell phone. [Ms.] Perry heard the girl tell her boyfriend, "I've been assaulted."

[Id.]. In short, the Government seeks to introduce Jane Doe's statements to Ms. Perry that (1) Defendant assaulted her; (2) Defendant choked her; (3) Jane Doe woke up with her pants down; and (4) Jane Doe jumped up and hit Defendant. [Transc. of July 2, 2008 call of calendar].

Defendant recognizes that "there is no precise amount of time between the event and the statement beyond which the statement cannot qualify as an excited utterance." [Doc. 89 at 2 (*quoting* Ledford, 443 F.3d at 711)]. However, Defendant argues that there is no evidence tending to show when the alleged startling event (*i.e.*, the alleged sexual assault) took place, and that "absent evidence of temporal proximity to the startling event, [Jane Doe's] statements must be excluded and do not qualify as excited utterances." [Doc. 89 at 2].[1]

---

[1] Defendant also contends that because he and Jane Doe engaged in a consensual sexual encounter, there was no startling event.

4

Because there is no precise amount of time between event and statement, beyond which the statement cannot qualify as an excited utterance, the "standard of measurement is the duration of the state of excitement." United States v. King, 221 F.3d 1353, at *4 (Table) (10th Cir. 2000) (*quoting* Fed.R.Evid. 803(2) advisory committee's note).  It is the character of the transaction or event that will largely determine the significance of the time factor. "[I]n deciding whether a statement qualifies as an excited utterance, the court may take into account the nature of the stressful event, the age of the declarant, and other factors indicating the declarant was still under the stress of the incident when he or she made the statement." King, 221 F.3d at *4.

In King, the victim was a 15-year-old boy who maintained that he had been raped by his 25-year-old uncle.  Following the attack, which occurred around 5:30 pm, the victim joined his friends, told them he had been raped, drank beer, and passed out in his friend's truck.  Around midnight, the victim's mother found him and, when they returned home, the victim told his mother about the attack.  King, 221 F.3d at *1.  Accordingly, approximately six and one-half hours passed between the startling event in King and the victim's first mention of it to his mother.

The district court denied the defendant's motion in limine to exclude the victim's statement to his mother, finding that when the victim made it, he was still under the influence of the excitement from the event. This finding was based upon (1) the victim's age, (2) the fact that he made the statement upon his first contact with his mother after the incident occurred, and (3) the fact that he made the statement after consuming alcohol when "one

5

might have expected the effect of alcohol to cause him to not discuss it." King, 221 F.3d at *4.[2]

In this case, lapse of time between the event and Jane Doe's statements to Ms. Perry does not necessarily doom their admission, particularly if Jane Doe made the statements upon her first opportunity to do so. This would be the case if, as Defendant asserts, Jane Doe was "extremely intoxicated that night" and went back to sleep after the incident. See King, 221 F.3d at *4 (continuing stress of startling event supported by facts that (1) statement in question made at first opportunity, and (2) effects of alcohol would likely cause declarant not to have made statement earlier). Ms. Perry's observations that (1) she heard "banging on her door;" (2) she heard a female voice saying "help me, help me;" (3) upon opening her door she saw Jane Doe attempting to pull up her pants; and (4) she saw that Jane Doe was crying, establish the circumstances surrounding Ms. Perry's encounter with Jane Doe and Ms. Perry's understanding of Jane Doe's physical and mental condition.[3] With proper foundation laid, the Court would find that the evidence is relevant and Jane Doe was under the influence

---

[2] But see United States v. Marrowbone, 211 F.3d 452 (8th Cir. 2000) (reversible error to allow as excited utterance statement of 16 year-old-boy who, while drunk, was allegedly raped by acquaintance, where (1) statement was made 3 hours after event occurred; (2) boy had reason to fabricate story (*i.e.*, making a charge of molestation might enable him to avoid a night in jail for being unlawfully intoxicated); (3) there was no evidence of boy's continuing excitement or stress between the time of the event and the time of the statement).

[3] Ms. Perry also stated during her interview that Jane Doe and Defendant came together to Ms. Perry's trailer. Being accompanied by her alleged assailant when she went to seek help could certainly cause Jane Doe to continue to be under the stress or excitement of the startling event she claims to have experienced. See King, 221 F.3d at *4 (in determining whether statement qualifies as excited utterance, Court can look to "other" factors indicating declarant was still under stress of incident when she made statement).

of excitement from the startling event when she made the statements to Ms. Perry as described above.

### 2. Statements to Shannon Tatro

Shannon Tatro also was interviewed by FBI agents. Mr. Tatro

> advised that on the morning of 3/25/07, he was in Albuquerque at his mother's house when he received a call on his cell phone from [Jane Doe]. [Mr.] Tatro recalled that [Jane Doe] was crying and really upset. [Mr.] Tatro estimated that it took him 45 minutes to calm her down. [Mr.] Tatro noted that he did not know where she was at first. [Jane Doe] told [Mr.] Tatro that she had been raped by [Defendant].

[Doc. 87-2, Tatro interview at 1].

With respect to Jane Doe's statement to Shannon Tatro that Defendant had assaulted her, Mr. Tatro reported that Jane Doe "was crying and really upset" when she called him, and that "it took him 45 minutes to calm her down." It is unclear from this limited proffer, however, whether Jane Doe "was crying and really upset" because she was still under the effect of the startling event, or because she again became emotional and lost composure upon speaking with her boyfriend/companion.

Thus, after the Government lays a proper foundation and establishes the circumstances of Jane Doe's encounter with Mr. Tatro, the Court will consider whether to permit Mr. Tatro's testimony under the "excited utterance" exception. After laying its foundation, counsel for the Government shall approach the bench and seek a ruling from the Court as to whether the testimony will be permitted as an excited utterance.

7

### *D. Defendant's Motion in Limine to Exclude Prior Bad Act Evidence* **[Doc. 82]**

By this motion, Defendant seeks to exclude evidence of two previous fights, in which he is alleged to have stabbed one man and hit another man with a fire poker. The Government responds that evidence of each altercation is admissible to show Defendant's motive, intent, plan, or absence of mistake or accident. [Doc. 85].

Although evidence of prior bad acts "is not admissible to prove the character of a person in order to show action in conformity therewith[, i]t may . . . be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. . . ." Fed.R.Evid. 404(b). Evidence of prior bad acts requires a defendant to defend against past actions and tends to show that he is "'generally bad.'" United States v. Robinson, 978 F.2d 1554, 1558 (10th Cir. 1992) (*quoting* United States v. Burkhart, 458 F.2d 201, 204 (10th Cir.1972)). For that reason, the Tenth Circuit urges its trial courts to determine that the proposed Rule 404(b) evidence (1) tends to establish intent, knowledge, motive, etc.; (2) is so related to the charged offense that it serves to establish intent, knowledge, motive, etc.; (3) has real probative value and not just possible worth; and (4) is close in time to the crime charged. Robinson, 978 F.2d at 1559. The Government bears the burden of demonstrating how the proffered evidence is relevant to one or more issues in the case, and

> must articulate precisely the evidentiary hypothesis by which a fact of consequence may be inferred from the evidence of other acts. In addition, the trial court must specifically identify the purpose for which such evidence is offered and a broad statement merely invoking or restating Rule 404(b) will not

suffice.

United States v. Kendall, 766 F.2d 1426, 1436 (10th Cir. 1985).  There must be a clear and logical connection between the alleged earlier offense or misconduct and the case being tried, and a "lack of clear association between the purported purpose for introduction of the evidence and the act itself renders the past conviction irrelevant, highly prejudicial and inadmissible."  Robinson, 978 F.2d at 1559 (internal quotations omitted).

   The Government has not clearly articulated the purpose (or purposes) for which it has offered evidence of Defendant's past alleged assaults, and the Court fails to see how evidence that Defendant may have stabbed one man and hit another with a fire poker would be relevant to prove that he sexually assaulted Jane Doe.  While the Government maintains that "[t]he prior assaults tend to corroborate [Defendant's] motive, intent, plan, or absence of mistake or accident[,]" [Doc. 85 at 2], the Government fails to show just how the evidence at issue does so.  For one thing, it is not at all clear how evidence of prior assaults would be relevant to any motive Defendant may have had for sexually assaulting Jane Doe, nor would it seem particularly helpful to showing his intent or plan to do so.  The Government has done no more than set forth "a broad statement merely invoking or restating Rule 404(b)[,]" which the Tenth Circuit has expressly stated "will not suffice" for purposes of admitting evidence of prior bad acts.  As evidence tending to show nothing more than that  Defendant is a bad person with a possible propensity to act violently, the evidence in question is irrelevant, not to mention substantially more prejudicial than probative.  For these reasons, *Defendant's*

9

*Motion in Limine to Exclude Prior Bad Act Evidence* will be granted.

### E. *United States' Second Motion in Limine Regarding Certain DNA Evidence* [Doc. 88]

In addition to DNA belonging to Defendant, there was found, in swabbings taken from Jane Doe, DNA belonging to a second and unknown contributor.  The second DNA sample was so minute that it was not possible to determine whether, for example, it was seminal fluid, or whether it came from a man or a woman.  The Government seeks to exclude evidence of this DNA sample as irrelevant as well as substantially more prejudicial than probative, inasmuch as the only inference that a jury could draw from its presence is that Jane Doe was sexually promiscuous prior to Defendant's alleged assault of her.

Evidence of an alleged sexual-assault victim's sexual predisposition is generally not admissible except that

> [i]n a criminal case, the following evidence is admissible, if otherwise admissible under these rules:
>
> (A) evidence of specific instances of sexual behavior by the alleged victim offered to prove that a person other than the accused was the source of semen, injury or other physical evidence;
>
> (B) evidence of specific instances of sexual behavior by the alleged victim with respect to the person accused of the sexual misconduct offered by the accused to prove consent or by the prosecution; and
>
> (C) evidence the exclusion of which would violate the constitutional rights of the defendant.

Fed.R.Evid. 412(b).

At the hearing, however, counsel for Defendant made clear that evidence of the second DNA sample is not being offered under Rule 412. Instead, counsel argues that the second DNA sample is physical evidence that is relevant and, moreover, exculpatory because it shows that there may have been another perpetrator. In other words,

> [Defendant] does not deny having had sexual relations with [Jane Doe]. He does vehemently deny that he raped her. If [Jane Doe] was raped, it was not by [Defendant]. While the defense has no evidence to demonstrate that [Jane Doe] has a propensity to engage in sexual relations with others, the evidence regarding an unknown contributor is relevant to [Defendant's] defense that he is not the "rapist."

[Doc. 90 at 2].

"'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed.R.Evid.401. The presence of another contributor's DNA is relevant to Defendant's theory that someone else assaulted Jane Doe. That the composition of the DNA is unknown and that the gender of the contributor cannot be determined are questions of weight that should be assessed by the trier of fact. Defendant will be allowed to introduce evidence of the second DNA sample.

### F. *United States' Third Motion in Limine Regarding Darren Moses* [Doc. 91]

Darren Moses is a cousin of Defendant, who maintains that approximately three years ago, Jane Doe ran away to Arizona with a married man. When the couple was found, Jane Doe allegedly lied to the police about her age, as well as the circumstances of the couple's

11

flight (after first telling police she had been abducted, Jane Doe later admitted that she had gone away willingly).  Defendant seeks to (1) question Jane Doe about this specific incident and her lies to police, and (2) ask Darren Moses for his opinion about Jane Doe's reputation in the community for truthfulness.[4]

Rule 608 provides that "[t]he credibility of a witness may be attacked or supported by evidence in the form of opinion or reputation, but subject to these limitations: (1) the evidence may refer only to character for truthfulness or untruthfulness, and (2) evidence of truthful character is admissible only after the character of the witness for truthfulness has been attacked by opinion or reputation evidence or otherwise."   Fed.R.Evid. 608(a).  Subsection (b) states that

> [s]pecific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' character for truthfulness . . . may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning the witness' character for truthfulness or untruthfulness, or (2) concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified.

Fed.R.Evid. 608(b).

---

[4] Originally, Defendant also had intended to question Darren Moses about Jane Doe's reputation for alcohol-induced promiscuity, specifically her "reputation of getting intoxicated and 'ending up with somebody.'" [Doc. 92 at 2].  At the hearing, however, counsel for Defendant withdrew that part of the motion.

Under the Rules, Darren Moses may offer evidence that Jane Doe has a reputation for untruthfulness. While Jane Doe herself can be questioned as to specific instances of lying to the police, Defendant concedes that extrinsic evidence of such instances cannot be introduced and that Jane Doe's responses to questions about specific instances will be binding upon Defendant.

Defendant also had initially sought to introduce, through Darren Moses, that Jane Doe has a reputation for becoming intoxicated and "always ending up with somebody." [Doc. 92 at 2]. Defendant originally asserted that such evidence (relevant to showing that he and Jane Doe engaged in consensual sex) was admissible under Rule 412(b)(1)(C). [Id. at 5]. Although counsel for Defendant stated at the motions hearing that she was withdrawing this part of the motion, the Court analyzes the issue for purposes of completeness.

The exceptions to Rule 412's general prohibition against the introduction of evidence for the purpose of proving a victim's sexual predisposition allow the admission, in a criminal case, of otherwise admissible

> (A) evidence of specific instances of sexual behavior by the alleged victim offered to prove that a person other than the accused was the source of semen, injury or other physical evidence;
>
> (B) evidence of specific instances of sexual behavior by the alleged victim with respect to the person accused of the sexual misconduct offered by the accused to prove consent or by the prosecution; and
>
> (C) evidence the exclusion of which would violate the constitutional rights of the defendant.

13

Fed.R.Evid. 412(b)(1).

As testimony that Jane Doe has a reputation for "always ending up with somebody" does not relate to a specific instance but, instead, paints a broad picture of her as being promiscuous, such testimony is not admissible under either subsection (A) or subsection (B). Nor would such testimony come within subsection (C), since its exclusion would not work a violation of Defendant's constitutional rights. See United States v. Alexander, 76 F.3d 388, at *4 (9th Cir. 1996) (unpublished) (in trial for aggravated sexual abuse, no error for district court to preclude cross-examination into victim's prior inconsistent statements as to presence of semen stains on her bed sheets where that evidence did not fall into any of Rule 412's exceptions, and further commenting that "a trial court's limitation of cross-examination on an unrelated prior incident, where its purpose is to attack the general credibility of the witness, does not rise to the level of a constitutional violation of the defendant's confrontation rights"). For these reasons, the motion in limine relating to Darren Moses will be denied.

As always, each pretrial evidentiary ruling set forth herein is subject to reconsideration in the event that unforeseen circumstances or a change in context should arise during the trial.

## III. CONCLUSION

**IT IS, THEREFORE, ORDERED** that *Defendant's Motion for Disclosure of Interview Notes* [Doc. 62] is **DENIED as MOOT**;

**IT IS FURTHER ORDERED** that *Defendant's Motion in Limine to Exclude Hearsay* [Doc. 81] is **DENIED IN PART and DEFERRED IN PART**;

**IT IS FURTHER ORDERED** that *Defendant's Motion in Limine to Exclude Prior Bad Act Evidence* [Doc. 82] is **GRANTED**;

**IT IS FURTHER ORDERED** that the *United States' First Motion in Limine Requesting Admission of Excited Utterance Evidence* [Doc. 87] is **GRANTED IN PART and DEFERRED IN PART;**

**IT IS FURTHER ORDERED** that the *United States' First Motion in Limine Requesting Admission of Excited Utterance Evidence* [Doc. 87] is **GRANTED** with respect to statements Jane Doe made to Marie Perry, subject to the Government's laying the proper foundation prior to the introduction of the statements in question;

**IT IS FURTHER ORDERED** that the *United States' First Motion in Limine Requesting Admission of Excited Utterance Evidence* [Doc. 87] is **DEFERRED** with respect to statements Jane Doe made to Shannon Tatro, subject to the Government's laying the proper foundation prior to the introduction of the statements in question and as further described above;

**IT IS FURTHER ORDERED** that *United States' Second Motion in Limine Regarding Certain DNA Evidence* [Doc. 88] is **GRANTED**;

**IT IS FURTHER ORDERED** that *United States' Third Motion in Limine Regarding Darren Moses* [Doc. 91] is **DENIED**;

**IT IS FURTHER ORDERED** that Defendant shall be prohibited from questioning Darren Moses about Jane Doe's reputation for alcohol-induced promiscuity.

**SO ORDERED** this 10th day of July, 2008, in Albuquerque, New Mexico.

_____
**M. CHRISTINA ARMIJO**
United States District Judge