IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**UNITED STATES OF AMERICA**,

    Plaintiff,

vs.                                                                              Cr. No. 07-791 MCA

**LEHMAN SMITH,**

    Defendant.

**MEMORANDUM OPINION AND ORDER**

**THIS MATTER** comes before the Court on Defendant Lehman Smith's *Motion for Judgment of Acquittal, or in the Alternative Motion for New Trial* [Doc. 131], filed July 30, 2008. Having considered the parties' submissions, the relevant law, and otherwise being fully advised in the premises, the Court denies the motion.

**I. BACKGROUND**

On April 24, 2007, Defendant Lehman Smith was charged in a one-count Indictment with having knowingly engaged and attempted to engage in a sexual act with Jane Doe,[1] a person who was incapable of appraising the nature of the conduct and who could not communicate unwillingness to engage in the sexual act, in violation of 18 U.S.C. §§ 1153, 2242(2), and 2246(2)(A). [Doc. 12]. Mr. Smith stood trial for the charge set forth in the Indictment from July 21, 2008 until July 24, 2008, when the jury returned a unanimous

---

[1] "Jane Doe" is the pseudonym for Delorian Shorty.

verdict of guilty. [Doc. 120].  On July 30, 2008, Mr. Smith filed his motion for judgment of acquittal or, in the alternative, for a new trial.

## II. ANALYSIS

### A. Rule 29: Motion for Judgment of Acquittal

Rule 29 of the Federal Rules of Criminal Procedure provides, in pertinent part, that "[a] defendant may move for a judgment of acquittal, or renew such a motion, within 7 days after a guilty verdict. . . ." Fed.R.Crim.P. 29(c)(1).  In deciding a motion for judgment of acquittal, the Court must ask "only whether taking the evidence—both direct and circumstantial, together with the reasonable inferences to be drawn therefrom—in the light most favorable to the government, a reasonable jury could find the defendant guilty beyond a reasonable doubt." United States v. Stiger, 413 F.3d 1185, 1193 (10th Cir. 2005) (*quoting* United States v. McKissick, 204 F.3d 1282, 1289 (10th Cir. 2000)).  The Court relies "on the jury, as the fact finder, to resolve conflicting testimony, weigh the evidence, and draw inferences from the facts presented." United States v. Radcliff, 331 F.3d 1153, 1157 (10th Cir. 2003) (internal quotations omitted).  Additionally, the Court must "accept the jury's resolution of the evidence as long as it is within the bounds of reason." United States v. Yoakam, 116 F.3d 1346, 1349 (10th Cir. 1997)(citations and internal quotations omitted).

The Court's role is to determine whether the evidence, if believed, would establish each element of the crime. United States v. Delgado-Uribe, 363 F.3d 1077, 1081 (10th Cir. 2004).  "[T]he evidence necessary to support a verdict need not conclusively exclude every other reasonable hypothesis and need not negate all possibilities except guilt." United States

v. Wood, 207 F.3d 1222, 1228 (10th Cir. 2000)(*quoting* United States v. Wilson, 182 F.3d 737, 742 (10th Cir. 1999)). The Court should not overturn a jury's finding unless no reasonable juror could have reached the disputed verdict. United States v. Carter, 130 F.3d 1432, 1439 (10th Cir. 1997)(citations omitted).  On the other hand, the Court should not uphold a conviction "obtained by piling inference upon inference. An inference is reasonable only if the conclusion flows from logical and probabilistic reasoning." United States v. Valadez-Gallegos, 162 F.3d 1256, 1262 (10th Cir. 1998)(citations and internal quotations omitted).  As the Tenth Circuit has stated:

> The rule that prohibits the stacking of inference upon inference merely indicates that at some point along a rational continuum, inferences may become so attenuated from underlying evidence as to cast doubt on the trier of fact's ultimate conclusion. In other words, the chance of error or speculation increases in proportion to the width of the gap between underlying fact and ultimate conclusion where the gap is bridged by a succession of inferences, each based upon the preceding one.

United States v. Summers, 414 F.3d 1287,  1294-95 (10th Cir. 2005) (internal quotations omitted).

In this case, the jury was instructed—without objection from Mr. Smith—that it could find Mr. Smith guilty of the offense of sexual abuse if it found that the Government had proven beyond a reasonable doubt that:

> (1) Defendant *knowingly* engaged, or attempted to engage, in a sexual act with Jane Doe;
> (2) the sexual act consisted of contact between the penis of Defendant and the vulva or anus of Jane Doe;
> (3) Jane Doe could not communicate unwillingness to engage in the sexual act;

>
> (4) the sexual act took place in the State and District of New Mexico on or about March 25, 2007;
> (5) Defendant is an Indian; and
> (6) the sexual act took place in Indian Country.

[See Doc. 109 at 8 (emphasis added)]. The jury also was instructed that "[a]n act is "knowingly" done, if done voluntarily and intentionally, and not because of mistake or accident or other innocent reason." [Id. at 9]. Mr. Smith now argues that "a judgment of acquittal is justified because the [G]overnment failed to prove that he acted knowingly in the commission of the alleged offense. Quite to the contrary, there was ample testimony . . . that Mr. Smith was so intoxicated that he could not even stand, speak or walk" [Doc. 131 at 3-4].

In this case, there is no evidence that Mr. Smith involuntarily, mistakenly, or accidentally engaged in sexual intercourse with Delorian Shorty. In a statement he made to investigating law enforcement officers the day after incident, Mr. Smith admitted to having had sex with Ms. Shorty for 30 minutes while she was asleep. He also stated that he was "sick of himself" because of it. This statement was admitted as a trial exhibit, and the jury was entitled to credit it. [See Doc. 118; Trial Exh. 2, "Lehman Smith written statement"].

For her part, Ms. Shorty testified that on the night of Saturday, March 24, 2007, she was at a party at which Mr. Smith, whom she had met once before, also was present. She testified that she was drinking and she described herself as "very intoxicated." [Doc. 136; Trial Transcript at 244]. She also said that while at the party, she "had nothing to do with Lehman Smith." [Id.]. According to Ms. Shorty, she fell asleep at approximately 2:00 a.m. Sunday, March 25, 2007, and testified as follows with respect to the manner in which she

was awakened:

> Q: And at some point, did you wake up from someone or something?
> A: Yes.
> Q: Can you describe what that was?
> A: Well, I was laying there on the couch. I fell asleep on my stomach and I felt a presence there. And I was still coming to my senses because I had been intoxicated and felt him there, you know, inside me and didn't think that it was for real, you know. I thought that it was just a dream.
> Q: Did you turn around and see who it was?
> A: I took—I remember taking like a quick glance, but it wasn't clear to me until after I came to my senses and noticed that something had happened when I realized that my pants were to my knees.
> Q: Did you get a good look at the person who was penetrating you?
> A: Yes.
> Q: Who was it?
> A: Lehman Smith.

[Id, at 239-240].

Additionally, there was undisputed testimony from Juliet Bickmore, whom the Court recognized as an expert in the area of forensic DNA analysis, that Mr. Smith's DNA was found on vaginal and genital swabbings taken from Ms. Shorty as part of a sexual-assault kit. The jury was entitled to conclude from this evidence that Mr. Smith acted knowingly (*i.e.*, voluntarily and intentionally and not because of mistake or accident).

Finally, Mr. Smith's suggestion that he was too intoxicated to have acted knowingly must be rejected, as voluntary intoxication is not a defense to the general-intent crime of sexual abuse. United States v. Medicine Horn, 447 F.3d 620, 624 (8th Cir. 2006). In short,

when viewed in a light most favorable to the Government, the evidence was sufficient to support the jury's determination that Mr. Smith knowingly engaged or attempted to engage in a sexual act with Delorian Shorty.  See Stiger, 413 F.3d at 1193.

### B. Rule 33: Motion for New Trial

Rule 33 of the Federal Rules of Criminal Procedure provides, in pertinent part, that "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires."  Fed.R.Crim.P. 33(a).  Mr. Smith argues that the interest of justice demands a new trial because "[d]uring closing argument, the prosecutor argued that the presence of [an] unknown person's DNA had been located in Mr. Smith's DNA strand and not Ms. Shorty's.  There had been no evidence introduced to support the foregoing conclusion." [Doc. 131 at 6].

The undisputed evidence at trial revealed that, in addition to DNA from Mr. Smith and Ms. Shorty, the DNA of an unknown contributor was found during the analysis of the vaginal-swab portion of Ms. Shorty's sexual assault kit.  During his closing rebuttal, the prosecutor commented that "[i]f the second unidentified DNA was in the male fraction, it was in Mr. Smith's sample. That's where the second unidentified sample came from." [Doc. 137 at 400].  This comment appears to have been based upon the testimony of Juliet Bickmore who, when questioned as to where in her analyzed samples she found the unidentified DNA, responded that "the mixture of more than one person was identified *in the sperm cell fraction* of my data."  [Doc. 136 at 226 (emphasis added)].  Ms. Bickmore also testified that sperm is the cellular component of seminal fluid, and that semen is testable for

6

DNA. [Id. at 219]. It is undisputed that Ms. Bickmore found Mr. Smith's DNA in the vaginal swabbings (labeled Q1 and Q2) and the genital swabbing (labeled Q13) that were taken from Ms. Shorty. [Id. at 230-231]. Thus, in light of Ms. Bickmore's testimony that Ms. Smith's DNA was found in multiple swabbings taken from Ms,. Shorty, the prosecutor's closing comment was not entirely devoid of evidentiary support from which the jury could reasonably have inferred that the unidentified DNA came from Mr. Smith.

In any case, immediately after the prosecutor made the disputed comment, both he and defense counsel approached the bench for a conference outside the hearing of the jury and requested a curative instruction. The Court then instructed the jury as follows:

> Ladies and Gentlemen, I instruct you as follows: I instruct you to disregard that portion of [the prosecutor's] argument here concerning the DNA as it was noted to be in the male fraction as coming from Mr. Smith's DNA. Disregard that.
>
> Further, I instruct you that the comments and the statements, the arguments of the lawyers in this case are not evidence. They are not evidence. The evidence is taken from the exhibits admitted into evidence in this trial *and from the testimony of the witnesses who gave testimony during the trial.* And most of all, I remind you and instruct you that it is your individual memories that should control here in assessing the evidence and considering what it was during the trial.

[Doc. 137 at 402 (emphasis added)]. Thus, the jury was expressly instructed not to consider the arguments of the lawyers to be evidence, and also that the evidence consisted of, among other things, "the testimony of the witnesses who gave testimony during the trial." [Id.]. Given that juries are presumed to follow their instructions (including limiting instructions), the Court determines that the interests of justice here do not demand a new trial. See

7

Crawley v. Dinwiddie, 533 F.3d 1226 (10th Cir. 2008) (repeating general principle that juries presumed to follow instructions); United States v. Jones, 530 F.3d 1292, 1299 (10th Cir. 2008) (applying presumption to limiting instructions); Lamb v. Oklahoma County Dist. Court, 229 Fed.Appx. 690, 696 (10th Cir. 2007) (unpublished opinion) (even improper remarks by prosecutor do not necessarily rise to level of due process violation where evidence of defendant's guilt is substantial; trial court immediately corrects any misstatements; and jury is instructed jury that only exhibits and witness testimony are evidence).

## III. CONCLUSION

For the foregoing reasons, the Court concludes that when the trial evidence, together with the reasonable inferences to be drawn from it, is viewed in the light most favorable to the Government, that evidence is sufficient to allow a reasonable jury to find Mr. Smith guilty beyond a reasonable doubt. The Court also concludes that, under the circumstances, the above-discussed closing-argument comment of the prosecutor does not warrant a new trial. Accordingly, Mr. Smith's *Motion for Judgment of Acquittal, or in the Alternative Motion for New Trial* will be denied.

**IT IS, THEREFORE, ORDERED** that the *Motion for Judgment of Acquittal, or in the Alternative Motion for New Trial* [Doc. 131] is **DENIED**.

**SO ORDERED** this 28th day of October, 2008, in Albuquerque, New Mexico.

                                                                                    _____
                                                                                    **M. CHRISTINA ARMIJO**
                                                                                    United States District Judge